Wayne Terrell LEE *v.* STATE of Arkansas

CR 80-97                                        609 S.W. 2d 3
Supreme Court of Arkansas
Opinion delivered October 27, 1980

*E. Alvin Schay*, State Appellant Defender, by: *Ray Harten-stein*, Chief Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was tried before a jury and convicted on three counts of second degree forgery in violation of Ark. Stat. Ann. § 41-2302 (Repl. 1977); one count of theft by receiving in violation of Ark. Stat. Ann. § 41-2206 (Repl. 1977); and criminal possession of a forgery device in violation of Ark. Stat. Ann. § 41-2312 (Repl. 1977). He was sentenced as a habitual offender after having been found guilty of four or more prior felony convictions.

On appeal the argument is that the evidence was insufficient to support the verdicts. We disagree with the appellant except as to Count 10 which was the conviction of theft by receiving.

The Little Rock Police Department obtained a search warrant for the premises at 9019 Rodney Parham Road, Apartment A, Little Rock, Arkansas. The warrant was served on February 1, 1979, at a time when the appellant was the only person present at the premises. The officers found a machine which was used for the purpose of writing money orders and has also been referred to as a check protector. They also found a briefcase in one of the bedrooms which contained the checks involved in the conviction of second degree forgery. These checks were drawn on Midsouth Woodcraft Company, West Helena, Arkansas, and each was in the amount of $158.66. Each check bore the signature of Clyde Horton. Also in the briefcase was a check for $11,-687.50 payable to J. & M. Associates at 9101 Rodney Parham Road, Little Rock, Arkansas. The maker of this check was Stuart Ford Company, Inc. Additional items in the briefcase were the identification and savings account cards of Ealgie Gilbert, Jr. and some of the appellant's checks which he had previously reported as having been stolen. The officers also found in the same bedroom several pictures of the appellant as well as medicine bottles with his name on them.

The briefcase containing all of the articles upon which the charges were based, except the check writing machine, was found in the same bedroom with the other items mentioned. The north bedroom contained a bed and a dresser. There was no covering on the bed nor anything in the dresser. The closet was also empty. The north bedroom appeared to be unoccupied. When the officers asked the appellant to open the briefcase he stated that he could not. Thereupon, the officers cut it open with a knife and discovered the items previously mentioned.

Appellant's brother, Ealgie Gilbert, Jr., testified he had formerly jointly occupied the premises with the appellant but he moved out about the last part of 1978. Ealgie Gilbert, Jr., an employee of the post office, stated that he saw Larry Gilmore moving into the premises after he had moved out. Gilbert further testified that he had never seen his brother with a briefcase which resembled the one in question but that he had seen Larry Gilmore with a similar briefcase in his possession at the premises on Rodney Parham Road. He further testified that Doris Jackson and Colette Finley were at the 9019 Rodney Parham address on several occasions when he visited after he had moved out. Gilbert had occupied the south bedroom when he lived at the address. This is the same bedroom in which the items in question were discovered. He also testified that the check to J. & M. Associates from Stuart Ford Company had arrived at the 9019 Rodney Parham address while he still lived there. He testified it was customary for him and the appellant to place misdelivered mail on the television until the person to whom is was addressed came to pick it up. Apparently, mail for former occupants of this address continued to arrive after appellant and his brother moved in. Gilbert and the appellant shared the expenses and rent of the apartment while they lived together. The apartment was rented by appellant in his name.

Sometime prior to the trial Larry Gilmore died. The record does not disclose the day of his death. Wanda Dokes testified that she knew the appellant and Larry Gilmore. In fact, she dated Gilmore in January of 1979 during which time she stated he lived at 9019 Rodney Parham. She further

stated Larry Gilmore had been in possession of a briefcase and she had observed him carrying it upstairs to the bedroom. She further testified that Gilmore tried to get her to cash some checks which she knew were not hers. She refused to participate in the scheme. The record does not reveal if Larry Gilmore was alive on February 1, 1979, the date of the search of the premises.

The central issue of the case before us is whether appellant had constructive possession of the items which were used to convict him. We quoted from another jurisdiction in *Cary* v. *State*, 259 Ark. 510, 534 S.W. 2d 230 (1976), when we stated:

> Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.

Thus, it was incumbent upon the state to prove that the appellant was in exclusive possession of the contraband or that he had joint dominion and control with another. If the appellant was either in exclusive control of the place where the contraband was found or in joint control with another person, he could have been found to be in possession for the purpose of the charges here in question. Appellant relies upon the case of *Ravellette* v. *State*, 264 Ark. 344, 571 S.W. 2d 433 (1978). We do not think *Ravellette* controls because the premises were admittedly jointly occupied by the accused and a codefendant. In fact, the codefendant was found in the resident jointly occupied by him and Ravellette. In the present case the state obviously relies upon the circumstantial evidence that the appellant was the sole occupant of the premises at the time of the search. There is no doubt that appellant and many of his personal property items were found on the premises. Also, several witnesses testified the appellant actually lived at that address. The evidence is more than sufficient to show that appellant did reside at the searched premises.

Obviously, it is the intent of the appellant to show that Larry Gilmore was also an occupant and shared control of the premises with the appellant. However, the physical evidence clearly indicates only one bedroom was occupied.

The test of upholding a jury verdict in a criminal case is whether there was substantial evidence to support the verdict. *Cary* v. *State*, supra. Under the circumstances of this case we feel that there is substantial evidence to support the finding of the jury that the appellant was in possession of the contraband.

It is true from the representative from the 7-11 Stores stated the check protector or money order machine was not reported missing to the police until early February. This would be subsequent to the date of the search. However, the witness stated he was not sure of the date and he very definitely identified the machine as the one belonging to his company. The fact that the exact date the machine was taken is uncertain is not fatal to the charge in this case. Therefore, we think the identification of the machine was sufficient to uphold the conviction on this count. From the testimony the jury could have found the machine was stolen prior to February 1, 1979.

Count 10 involved appellant's possession of a check from Stuart Ford Company, Inc. to J. & M. Associates. The evidence in the record indicates this check was delivered by mistake to appellant's address. Ark. Stat. Ann. § 41-2206(1) (Repl. 1977) states:

A person commits the offense of theft by receiving if he receives, retains or disposes of stolen property of another person, knowing that it was stolen, or having good reason to believe it was stolen.

There is no evidence whatsover in the record indicating appellant knew this check was stolen. In fact, the only evidence, other than the existence of the check, is that it was delivered by the postal service to the wrong address.

The trial court is affirmed on Counts 7, 8, 9 and 12; the

conviction on Count 10, theft by receiving, is reversed and dismissed.

Affirmed in part; reversed and dismissed in part.

MAYS, J., not participating.